UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| JULIE PERRY, | ) |
| Plaintiff, | ) CASE NO. 3:20-CV-00151-JCH |
| v. | ) |
| MONRO, INC., | ) MARCH 12, 2020 |
| Defendant. | ) |

## REQUEST FOR LEAVE TO AMEND COMPLAINT

Pursuant to Federal Rule of Civil Procedure 15 et seq., the Plaintiff hereby moves to amend her complaint as the matter has been recently removed from Connecticut Superior Court to this Court. This first amendment is for the purpose of making a formal demand for a jury in the district court and to comply with the procedural requirements set forth by the Judge presiding over this case. A copy of the amended pleading is attached hereto.

THE PLAINTIFF

By: /s/ Bryan P. Fiengo
Bryan P. Fiengo
Fed. Bar No. ct27346
Suisman, Shapiro, Wool, Brennan,
Gray & Greenberg, P.C.
2 Union Plaza, Suite 200, P.O. Box 1591
New London, CT 06320
Tel. (860) 442-4416
Fax (860) 442-0495
Email: bfiengo@sswbgg.com

## CERTIFICATION

This is to certify that on the 12th day of February, 2020, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

                                        /s/   Bryan P. Fiengo
                                        Bryan P. Fiengo
                                        Commissioner of the Superior Court

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| JULIE PERRY, | ) |
| | ) |
| Plaintiff, | ) CASE NO. 3:20-CV-00151-JCH |
| | ) |
| v. | ) |
| | ) |
| MONRO, INC., | ) |
| | ) MARCH 12, 2020 |
| | ) |
| Defendant. | ) |

**AMENDED COMPLAINT AND DEMAND FOR JURY**

Pursuant to Federal Rule of Civil Procedure 38(b), the Plaintiff hereby makes demand for a trial by jury with regard to the statutory claims set forth below and for a jury determination of all damages reserved by said statutes for the jury. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

1. The Plaintiff, Julie Perry, is forty (40) years of age and a resident of the State of Connecticut.

2. The Defendant Monro, Inc., is a foreign corporation, located at 200 Holledar Parkway, Rochester, New York ("Monro").

3. At all times relevant hereto, the Defendant has employed more than fifteen (15) employees in the State of Connecticut.

4. At all times relevant hereto, the Defendant has maintained an office/facility/franchise/store at 317 N. Frontage Road, New London, Connecticut ("Monro-New London") and at 252 Flanders Road, Niantic, Connecticut ("Monro-Niantic"), among other locations. The Defendant's business was comprised of general auto repair, auto service and tire repair/replacement.

1

5. Messrs. Bob Smith, Kenneth Magassarian, Timothy Ring and Andrew Morgan, along with Ms. Marie Cognata held supervisory and/or management positions with the Defendant and their acts and/or omissions as set forth below were as agent, representative, executive and/or official of the Defendant and occurred during the course and scope of employment.

6. Ms. Perry was hired as a sales manager at Monro-New London in June 2018 at a weekly salary of $800.00 with the potential for bonuses based upon sales. She was transferred to Monro-Niantic on or about November 29, 2018.

7. At all times relevant hereto, Ms. Perry performed the duties of her position in a satisfactory manner.

8. Early on during her tenure, the Plaintiff observed that her managers were engaged in pervasive consumption of alcohol on the job. On several occasions, Ms. Perry was offered alcohol during work hours and observed technicians making runs to the package store for managers.

9. Alarmed by this practice and the potential for serious physical injury and/or death related to faulty repairs/service, Ms. Perry approached Monro-New London store manager Bob Schmidt with her concerns. Mr. Schmidt ignored her repeated requests to discuss the matter until finally, when she had his attention, he shrugged by her and walked away.

10. In ignoring her direct concerns, Mr. Schmidt exhibited a condescending and dismissive attitude toward the Complainant as a female and dismissed her opinions as unworthy of consideration. This sexist attitude was further exhibited by Mr. Schmidt throughout Ms. Perry's experience at Monro-New London.

11. After being summarily dismissed by Mr. Schmidt based upon her gender, Ms. Perry properly went up the chain to a corporate representative of the Defendant, Kenneth Magassarian. Upon receipt of the complaint, Mr. Magassarian took no steps to address her concerns which inaction was consistent with Monro's attitude toward issues/suggestions raised by a female employee.

12. During this same period at Monro-New London, Ms. Perry's interactions with Mr. Schmidt were disturbing in terms of the abusive manner in which he treated her as a woman. Mr. Schmidt often demanded action from Ms. Perry with the use of profanity, for instance referring to her as "fucking stupid."

13. During one interaction with Mr. Schmidt when the two were near the printer area, he called her "fucking stupid," told her to "get the Fuck out of here" and finally, yelled for her to "get the Fuck out." In the midst of this tirade, he slammed his hand down on Ms. Perry's shoulder.

14. On a separate occasion at Monro-New London, Mr. Schmidt shoved Ms. Perry across the shop.

15. Ms. Perry reported the vulgar, abusive language and physical assaults to the Defendant's corporate representative, including Human Resources representative Marie Cognata.

16. Embedded in this vulgar and abusive conduct was a clear message to Ms. Perry that she was inferior as a female in an auto repair shop.

17. On or about September 2018, in response to Ms. Perry's specific complaints about abuse, Mr. Magassarian arranged for a meeting where Ms. Perry was compelled to sit down, face-to-face with Mr. Schmidt. Monro Zone Manager Timothy

Ring was also present for the meeting. Mr. Ring found that all of the factual allegations made by Ms. Perry were substantiated and indicated that it would be addressed.

18. At the close of the meeting, Ms. Perry was compelled by Mr. Magassarian to reconcile with Mr. Schmidt despite his despicable conduct. Mr. Schmidt was neither disciplined nor reprimanded for his abusive conduct toward a female subordinate. By excusing such behavior, Mr. Magassarian and Mr. Ring endorsed the misogynistic behavior of Mr. Schmidt and paved the way for further abuse.

19. Ms. Perry was forced to return to work at Monro-New London under the management of Mr. Schmidt.

20. Upon her return, a volatile incident occurred where Mr. Schmidt called Ms. Perry a "fucking idiot" and unlawfully restrained her so that she was trapped in a certain fixed area in the office. She was terrified of further physical harm as Mr. Schmidt had placed his hands on the Plaintiff on prior occasions.

21. During this period, Ms. Perry was also sexually harassed by Mr. Schmidt when he indicated to her that the bulge in his pocket was "not a pencil or cell phone" and that in reference to placement of a certain item, he could tell her "where to put it."

22. Mr. Schmidt's pervasive misconduct was grotesque.

23. After the most recent occasions of sexual harassment, assault and abuse on the basis of her gender, Ms. Perry lodged another complaint with human resources, and specifically Ms. Cognata.

24. Upon receipt of her most recent complaint, the Defendant conducted no further investigation and imposed no sanction against Mr. Schmidt. On or about November 29, 2018, the Defendant transferred Ms. Perry to Monro-Niantic.

25. Ms. Perry was assigned to work in her position as sales manager under Monro-Niantic manager Andrew Morgan.

26. During her tenure in Niantic, Mr. Morgan indicated to Ms. Perry on several occasions that "Mr. Magassarian hates her guts" and indicated that words could not express how much Mr. Magassarian hated her.

27. Mr. Morgan further indicated to Ms. Perry that the mechanics at Monro-Niantic "do not respect her" and that they question why she was hired to work in auto repair.

28. In her first week at Monro-Niantic, a co-worker said aloud in reference to Ms. Perry: "watch out for [her], she is a walking HR case." Certain other of her co-workers laughed about the commentary.

29. It is believed that based upon communications and discussions with management, mechanics were not speaking with Ms. Perry which made it extremely difficult to perform her job.

30. During a conversation with another store manager, Mr. Magnassarian indicated that he should have never hired a woman in reference to the Plaintiff.

31. The Defendant, through its acts and/or omissions, and through the conduct of its representatives, officials, managers and decision-makers created and continued to foster an abusive and hostile working environment with a clear message as to the Complainant's gender.

32. The Defendant was domineering, disrespectful, belligerent, abusive, belittling, condescending and assaultive toward Ms. Perry.

33. Ms. Perry continued to suffer severe emotional distress relating to the hostile work environment which persisted at the Defendant's facilities.

34. She has suffered from physical illness related to her emotional distress, pain and suffering to include nausea, stomach upset, loss of sleep, loss of appetite, trepidation and lethargy.

35. The Defendant's misconduct and continuing misconduct ultimately led to its decision to terminate her employment on or about April 8, 2019. On that date, after being advised that she was still considered an employee of the Defendant, she appeared for work. Upon her arrival and after remaining for approximately thirty (30) minutes, the Complainant was terminated by the store manager.

36. After her termination on April 8, 2019, Ms. Perry contacted several managers of the Defendant all of whom confirmed through their words and/or actions that she was terminated from employment.

37. The Defendant's decision was blatantly illegal and was demonstrative of discriminatory and retaliatory animus on the part of her supervisors.

38. The Complainant has been caused to suffer damages including loss of pay/benefits, loss of future pay/benefits, attorneys' fees and emotional distress.

**FIRST COUNT**: (GENDER/SEX DISCRIMINATION)

1-38.   Paragraphs 1-38 of the Complaint are hereby realleged and incorporated herein as paragraphs 1-38 of this First Count.

39.   The Plaintiff is a female with protected status under the Connecticut Fair Employment Practices Act ("CFEPA"), C.G.S. § 46a-60 et seq.

40.   The Plaintiff was qualified for the position she held with the Defendants and performed satisfactorily.

41.   The Defendant demonstrated, through the acts of supervisors and/or duly authorized persons, clear animus toward the Plaintiff as a female working in the automotive repair industry.

42.   The Defendant's misconduct culminated in the termination of the Plaintiff's employment, which decision was motivated in whole or in part by the Plaintiff's sex/gender.

43.   The Defendant did not have a legitimate reason to terminate the Plaintiff's employment.

44.   The Defendant's decision violates C.G.S. § 46a-60(b)(1).

45.   As a result of the wrongful discharge, the Complainant has been caused to suffer damages including loss of pay/benefits, loss of future pay/benefits, attorneys' fees and emotional distress.

**SECOND COUNT**: (SEXUAL HARASSMENT)

1-45.   Paragraphs 1-45 of the First Count are hereby realleged and incorporated herein as Paragraphs 1-45 of this Second Count.

46. The grotesque and pervasive misconduct of the Defendant's supervisors, aimed at the Plaintiff's sex, had the purpose or effect of substantially interfering with the Plaintiff's work performance and/or created an intimidating, hostile and/or offensive working environment in violation of C.G.S. § 46a-60(b)(8).

47. The hostile and intimidating work environment made job performance substantially more difficult, affected the Plaintiff's health and well-being and had a devastating impact on the Plaintiff's mental health.

48. Tolerance of the hostile and intimidating work environment, establishing the Plaintiff's sex as her defining characteristic, became a term and condition of continued employment and any resistance thereto was deemed a failure to perform job duties.

49. The pervasive sexual harassment eventually resulted in the decision to terminate the Plaintiff's employment.

50. The Defendant took no steps to remediate the sexual harassment and discrimination notwithstanding the Plaintiff's several attempts to bring the harassment to light.

51. As an alternative to taking steps to remediate, the Defendant wrongfully terminated the Plaintiff's employment.

52. As a result of the wrongful discharge, the Complainant has been caused to suffer damages including loss of pay/benefits, loss of future pay/benefits, attorneys' fees and emotional distress.

**THIRD COUNT**: (RETALIATION)

1-52.  Paragraphs 1-52 of the Second Count are hereby realleged and incorporated herein as paragraphs 1-52 of this Third Count.

53.  The Plaintiff opposed the discriminatory employment practices of the Defendant and appropriately filed complaints internally with Defendant's management.

54.  Immediately following her complaints, the discriminatory conduct intensified, worsened and her job performance became more difficult due to management tainting her work environment.

55.  The Plaintiff's opposition was met with extreme disdain in that management expressed hatred of her, regret that they had hired a woman for the automotive industry and forced her into situations wherein she had to confront the perpetrator and continue to work with him.

56.  The Plaintiff was terminated under circumstances which demonstrate animus toward her protected activity of reporting on the sexual harassment and discrimination.

57.  The Defendant's misconduct culminated in the termination of the Plaintiff's employment, which decision was motivated in whole or in part by the Plaintiff's protected activity.

58.  The Defendant did not have a legitimate reason to terminate the Plaintiff's employment.

59.  The Defendant's decision violates C.G.S. § 46a-60(b)(4).

60.  As a result of the wrongful discharge, the Complainant has been caused to suffer damages including loss of pay/benefits, loss of future pay/benefits, attorneys' fees and emotional distress.

**FOURTH COUNT**: (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)

1-60. Paragraphs 1-60 of the Third Count are hereby realleged and incorporated herein as paragraphs 1-60 of this Fourth Count.

61. The Defendant's conduct extends beyond the bounds of decency acceptable in any place of employment.

62. The Defendant's extreme and outrageous conduct occurred in the course of the Plaintiff's termination from employment.

63. The Plaintiff has been caused to suffer severe emotional distress as a result of the Defendant's conduct which includes physical illness related thereto, pain and suffering to include nausea, stomach upset, loss of sleep, loss of appetite, trepidation and lethargy.

WHEREFORE, the Plaintiff prays for relief as follows:

1. Lost wages and benefits;
2. Future wages and benefits;
3. Non-economic damages (i.e., emotional distress);
4. Punitive Damages;
5. Attorneys' Fees and Costs;
6. Interest; and
7. Such other relief as the Court deems equitable.

THE PLAINTIFF

By: /s/ Bryan P. Fiengo
Bryan P. Fiengo
Fed. Bar No. ct27346
Suisman, Shapiro, Wool, Brennan,
Gray & Greenberg, P.C.
2 Union Plaza, Suite 200, P.O. Box 1591
New London, CT 06320
Tel. (860) 442-4416
Fax (860) 442-0495
Email: bfiengo@sswbgg.com

## CERTIFICATION

This is to certify that on the 12th day of February, 2020, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

/s/   Bryan P. Fiengo
Bryan P. Fiengo
Commissioner of the Superior Court